```
            IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF HAWAII

INTERNATIONAL LONGSHORE &     )   Civ. No. 06-00260 SOM/LEK
WAREHOUSE UNION, LOCAL 142,   )
et al.,                       )
                              )
                              )   ORDER DENYING PLAINTIFFS'
          Plaintiffs,         )   MOTION FOR TEMPORARY
                              )   RESTRAINING ORDER AND/OR
      vs.                     )   PRELIMINARY INJUNCTION
                              )
C. BREWER & COMPANY, LTD.;    )
WAILUKU AGRIBUSINESS CO.,     )
INC.; OLOKELE SUGAR COMPANY,  )
LTD.; and JOHN DOES 1 THROUGH )
20,                           )
                              )
          Defendants.         )
_____)
```

ORDER DENYING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

I.      INTRODUCTION.

Plaintiffs International Longshore & Warehouse Union, Local 142 (the "Union"), Mauro R. Cadavona ("Cadavona"), Charles K. Fu ("Fu"), Clement Montalvo ("Clement"), Judith Montalvo ("Judith"), Regino Cabacungan ("Regino"), and Alfred Cabacungan ("Alfred")[1] (collectively, "Plaintiffs") move this court for a temporary restraining order and preliminary injunction, requiring Defendants C. Brewer & Co., Ltd. ("C. Brewer"), Olokele Sugar Company ("Olokele"), and Wailuku Agribusiness, Inc. ("Wailuku") (collectively, "Defendants"), "to continue providing medical coverage to the retirees until the Court has had an opportunity

---

[1] Cadavona, Fu, Clement, Judith, Regino, and Alfred are collectively referred to as "Employees."

to rule on the legality of C. Brewer's decision to terminate its lifetime benefits plans in favor of lump sum payments."[2] Plaintiffs allege that, on April 30, 2006, C. Brewer unlawfully ceased its contributions to Employees' medical coverage without their consent and, instead, provided them with unsatisfactory "lump sum" checks to pay for their individual medical plans.

Plaintiffs argue that they are entitled to injunctive relief because they have an overwhelming likelihood of success on their claims that Defendants' actions violated section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and sections 404(a), 502(a)(1)(B), and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104(a), 1132(a)(1)(B), 1132(a)(3).  Plaintiffs also argue that they will suffer irreparable harm if their medical benefits are not immediately reinstated because they cannot afford to pay for medical coverage without depositing the checks.  Arguing that Defendants will incur only "minimal financial burdens" if this

---

[2] At the time Plaintiffs filed the present motion, they also argued that "the Court should enjoin defendants from enforcing or in any way relying on the retirees' endorsement of the 'lump sum' medical coverage payments to contend that they have satisfied their obligation to provide lifetime medical benefits to the retirees."  Motion at 4.  After the present motion was filed, Defendants "agree[d] that they will not rely upon or attempt to enforce in any way, nor raise as an affirmative defense to Plaintiff's claims, [the] signed waiver or acknowledgment printed on the reverse side of the 'lump sum' payment checks C. Brewer provided to retirees of [Olokele and Wailuku]."  Ex. D (attached to Opp.) at 1.  Thus, the court need not reach Plaintiffs' argument on that issue.

court orders the requested injunctive relief, Plaintiffs contend that the balance of hardships tips sharply in their favor. Plaintiffs also request that the court grant conditional class certification "for purposes of ordering immediate, preliminary injunctive relief."

Defendants argue that Plaintiffs cannot show a likelihood of success on the merits because their actions are in compliance with the LMRA and ERISA.  Regarding Plaintiffs' possible irreparable injury or hardship, Defendants point to their agreement not to rely on or attempt to enforce the waiver printed on the back of the checks distributed to Employees. Defendants argue that Employees can endorse, deposit, or cash the checks and use that money to fund their individual medical plans throughout the pendency of this case.  Defendants argue that there is no possibility that Plaintiffs will suffer any irreparable harm or injury.  Defendants also ask this court to decline Plaintiffs' request to award class-wide injunctive relief.

The court agrees that Plaintiffs make no showing of possible imminent irreparable harm.  The court denies Plaintiffs' request for a temporary restraining order and preliminary injunction.

II.        FINDINGS OF FACT.

This court sets forth its findings of fact in numbered paragraphs, for ease of reference in later proceedings.

1.  The pertinent facts are undisputed.  Employees are retired plantation workers and/or spouses of retired plantation workers previously employed by Olokele and Wailuku.  Specifically, Cadavona and Fu worked for Olokele, whereas Regino, Alfred, and Clement worked for Wailuku.  Complaint ¶¶ 6-10.  Judith is Clement's spouse.  Complaint ¶ 10.  As early as 1951, the Union represented plantation workers employed by Olokele and Wailuku, both C. Brewer subsidiaries, and represented Employees during their employment with Olokele and Wailuku.  Complaint ¶ 11.

2.  Olokele workers were covered by a series of collective bargaining agreements until Olokele sold its assets and operations in 1994.  <u>See</u> Exs. F-O (attached to Motion).  Wailuku workers were similarly covered by a series of collective bargaining agreements from 1950 until the late 1990s, when the company phased out its operations.  <u>See</u> Exs. F, K-l, P-T (attached to Motion).  During the course of its collective bargaining relationship with Olokele and Wailuku, the Union negotiated health benefits for Employees.  Ex. I (attached to Motion).

      3.    When Olokele sought to sell its assets in 1994, the Union negotiated with Olokele, focusing on the importance of guaranteeing lifetime medical coverage to retirees and eligible spouses.  Declaration of Eusebio Lapenia, Jr. (5/11/2006) ("Lapenia Decln.") ¶¶ 4-5.  On April 7, 1994, the Union entered into a Tripartite Agreement with Olokele and the company buying its assets.  The Tripartite Agreement stated:

> [Olokele] shall continue to be obligated to provide retiree medical benefits for its employees who retired on or before the closing of the purchase of [Olokele's] assets by [the buyer] . . . . <u>[Olokele's] obligation to provide such retiree medical benefits</u> (subject to the copayment, premium sharing and benefit provisions of the 1991-1995 Memorandum of Agreement) <u>shall continue until there are no further eligible pensioners or spouses</u>.

Ex. O (attached to Motion) at 3 (emphases added).

      4.    In 1994, Wailuku began planning to terminate its pineapple operations.  The Union negotiated a Memorandum of Agreement with Wailuku that addressed, among other things, the continuation of retiree medical benefits.  Lapenia Decln. ¶¶ 6-7.  The Memorandum of Agreement provides:

> The Medical Plan for Pensioners between the Companies and the Union which expired on November 30, [1993], is reinstituted and extended through the phase out period.  In addition, following the final termination of pineapple operations, <u>the Company agrees to maintain the medical plan for present and eligible pensioners</u>.

Ex. S (attached to Motion) ¶ 4 (emphasis added).

5. In 1996, when Wailuku was in the final stages of closing its plantation operations, it offered its employees a choice of severance packages or lifetime medical coverage. Declaration of Delbert DeRego (5/9/2006) ¶¶ 3-4. Clement opted for lifetime medical benefits. Declaration of Judith Montalvo (5/11/2006) ("Judith Decln.") ¶ 5. A letter from Wailuku to Clement confirmed Wailuku's promise to provide lifetime medical benefits:

> This letter is to inform you that you will be switched from our "Kaiser Pineapple Bargaining Unit (BU)" medical plan (for Active BU personnel), to our "Kaiser Under 65 Retirement" medical plan effective December 1, 1996. This is due to your election to receive medical coverage at the time of your separation from the company. . . . <u>This coverage will be at NO COST to you as part of our agreement with you to offer medical coverage in lieu of severance pay for life.</u> You may stop payments for medical coverage starting December 1, 1996, as the cost for the entire plan will be borne by the company.

Ex. T (attached to Motion) at 1 (emphasis added).

6. In mid-February 2006, C. Brewer informed Plaintiffs that it intended to stop contributing to their medical plans as of May 1, 2006. Ex. A (attached to Declaration of Federico Galdones (5/10/2006) ("Galdones Decln.")) at 2, 4. C. Brewer explained that it "ha[d] elected to give [them] a lump sum cash payment" to cover their individual medical plans. Ex. A (attached to Galdones Decln.) at 2, 4. C. Brewer also informed

the Union that it was in the "dissolution process" and would no longer contribute to Employees' medical coverage, instead supplying them with lump sum checks. Ex. A (attached to Galdones Decln.) at 1.

       7.  On or about April 30, 2006, C. Brewer stopped contributing to Employees' medical plans and sent them lump sum checks.  Declaration of Mauro R. Cadavona (5/11/2006) ("Cadavona Decln.") ¶ 7; Judith Decln. ¶¶ 7-8.  Regino received a check for $13,259.00; Cadavona received a check for $3,179.00; Clement received a check for $40,497.00; and Judith received a check for $59,220.[3]  Declaration of Regino Cabacungan (5/10/2006) ("Regino Decln.") ¶ 6; Cadavona Decln. ¶ 7; Judith Decln. ¶¶ 8-9.  The following language appeared on the back of each check:

> By endorsing this check, I acknowledge that this check amount represents full satisfaction of all retiree medical benefits due to me from C. Brewer and Co., Ltd. and that I have no further claims against C. Brewer and Co., Ltd. for retiree medical benefits.

See, e.g., Cadavona Decln. ¶ 7; Judith Decln. ¶¶ 8-9.  Fearing that they would waive their claims against Defendants, none of the Employees except Alfred endorsed, deposited, or cashed the check.  See Complaint ¶ 41; Regino Decln. ¶ 8; Cadavona Decln. ¶ 8; Judith Decln. ¶ 10.

---

[3] The record does not indicate the value of the checks received by Fu and Alfred.

7

        8. Plaintiffs filed the Complaint and the present motion seeking injunctive relief less than two weeks after C. Brewer sent the lump sum checks. The parties then entered into the "Agreement Re: Continuance of TRO Hearing and Settlement Discussions," which provides:

> <u>Defendants agree that they will not rely upon or attempt to enforce in any way, nor raise as any affirmative defense to Plaintiff's claims, [the] signed waiver or acknowledgment printed on the reverse side of the "lump sum" payment checks</u> C. Brewer provided to retirees of [Olokele] and [Wailuku]; provided however that the Parties agree that Defendants continue to be able to rely upon and raise all other affirmative defenses, legal, and factual arguments, and any other response to Plaintiff's claims . . . .

Ex. D (attached to Opp.) at 1 (emphasis added).

III.    <u>CONCLUSIONS OF LAW.</u>

        1. The standards for granting a temporary restraining order and a preliminary injunction are the same. <u>Haw. County Green Party v. Clinton</u>, 980 F. Supp. 1160, 1164 (D. Haw. 1997). To obtain either, a party must demonstrate: (1) probable success on the merits and the possibility of irreparable harm; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting relief. <u>Topanga Press, Inc. v. City of Los Angeles</u>, 989 F.2d 1524, 1528 (9th Cir. 1993); <u>see</u> <u>Earth Island Inst. v. U.S. Forest Serv.</u>, 442 F.3d 1147, 1158-59 (9th Cir. 2006). These two

formulations represent two points on a sliding scale, with the required degree of irreparable harm increasing as the probability of success decreases. Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994). These formulations are not separate tests, but the extremes of a single continuum. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980).

     2. No matter where a case falls on the continuum, the moving party must demonstrate the "possibility of irreparable harm." Earth Island Inst., 442 F.3d at 1159. Thus, even assuming Plaintiffs have a high probability of success on the merits, they must also show the possibility of irreparable harm to be entitled to their requested relief. See id.

     3. Plaintiffs fail to submit any evidence that imminent irreparable harm is possible. They allege harm in the form of "the risk to their health, and the resulting social and economic consequences." Motion at 33. They also assert that they do not have sufficient funds to pay for the high cost of their individual medical plans because they are on fixed incomes, do not have much money saved, and are afraid to deposit the checks in fear that they will waive any claim they have against Defendants. Motion at 32. However, now that Defendants have agreed not to enforce the waiver on the back of the checks, Employees can endorse, deposit, or cash the checks and use that

9

money to pay for their medical coverage without waiving their claims. Even assuming they ultimately prevail on the merits of their claims, Plaintiffs will be entitled, at most, to have C. Brewer contribute to medical insurance premiums. There is no evidence that any Employee's lump sum check is insufficient to pay what would have been C. Brewer's contribution to the premiums, at least for the period between now and the trial of this case, which the court expedites and sets to begin on December 5, 2006.

    4. Plaintiffs argue that injunctive relief is still warranted because: (1) "the benefits provided by the individual plans . . . are more expensive than those provided under the terminated Brewer plan"; (2) the lump sum payments are taxable; (3) the lump sum payments "presume[] that retirees will manage their benefits through a long-term financial investment plan of a type that many may find unfamiliar"; and (4) the lump sum payments may be insufficient if Employees live longer than predicted by the actuarial formula on which the lump sum check amounts were based. Reply at 16-17. The court is not persuaded.

    5. Plaintiffs' arguments essentially concern whether the checks will adequately cover Employees' medical needs for the rest of their lives. However, on this motion for only preliminary injunctive relief, this court is concerned with whether the checks will pay for what Employees would have

received had C. Brewer continued to contribute to medical premiums until the disposition of this case, not for their lifetimes.  See E&G Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 990 (9th Cir. 2006) (noting that the purpose of a preliminary injunction is "to preserve rights pending resolution of the merits of the case by the trial").  Therefore, regardless of whether Employees are paying higher premiums for lesser benefits under their individual medical plans, whether the lump sum payments will be taxed, or whether the payments will cover Employees' medical plans for the rest of their lives, Plaintiffs are not irreparably harmed if, at least for the next six months, the lump sum checks will put Employees in the position they would have been in with continued contributions from C. Brewer.  The court notes that there is not actually any evidence before the court of premium amounts or coverage restrictions, so the court cannot actually find possible harm in the form of higher premiums, uncovered medical procedures or drugs, increased copayments, or increased Employee liability for payments.

   6.  In failing to produce any evidence that the lump sum checks do not put them in the same position for the next six months, Plaintiffs fail to establish a possibility of irreparable harm.  They are therefore not entitled on the present record to a temporary restraining order or preliminary injunction.  See Earth Island Inst., 442 F.3d at 1159 (noting that preliminary

injunctive relief requires a showing of at least the possibility of irreparable harm). Accordingly, the court denies Plaintiffs' motion.

       7. Given Plaintiffs' failure to show the possibility of irreparable harm, the court need not and does not address the parties' arguments concerning likelihood of success on the merits. Similarly, because no injunctive relief is granted, the court need not address Plaintiffs' request to "grant conditional certification of the class for purposes of ordering immediate, preliminary injunctive relief." Motion at 34.

IV.    CONCLUSION.

In light of the foregoing, the court denies Plaintiffs' motion for temporary restraining order and preliminary injunction.

The court sets an expedited trial date of December 5, 2006, and a dispositive motions deadline of August 1, 2006. The parties are to confer with respect to other pretrial deadlines and either submit a stipulation to the court or, if they are unable to agree on deadlines, meet with the Magistrate Judge to discuss those other deadlines.

This motion is without prejudice to a renewed motion for preliminary injunctive relief based on a fuller record containing evidence of possible imminent irreparable harm.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 20, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**International Longshore & Warehouse Union, Local 142, et al. v. C. Brewer & Co., Ltd. et al.**, Civ. No. 06-260 SOM/LEK; ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION.